**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-385-RJC-DCK**

| | |
|---|---|
| PETER TSCHIFFELY, )<br><br>Plaintiff, )<br><br>v. )<br><br>CROSS COUNTRY ADJUSTING, INC., )<br>d/b/a Cross Country Adjusting of Pageland, )<br><br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Cross Country Adjusting, Inc.'s Motion To Dismiss Plaintiff's Complaint" (Document No. 6). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

## I. BACKGROUND

Peter Tschiffely ("Plaintiff" or "Tschiffely") initiated this action with the filing of a Complaint in the Superior Court of Mecklenburg County, North Carolina, on June 23, 2021. (Document No. 1-1, pp. 3-6). The Complaint asserts a claim of breach of contract against Cross Country Adjusting, Inc. ("Defendant" or "CCA"). (Document No. 1-1, pp. 5-6).

According to the Complaint, Defendant "is a company that provides, among other services, insurance claim adjusting services as well as residential and commercial property claim management." (Document No. 1-1, p. 4). Plaintiff "has developed a network of valuable contacts within the insurance industry." <u>Id.</u> The "parties entered into a binding contract titled, 'Referral Fee Agreement'" (Document No. 1-1, pp. 7-9) (the "Agreement"). "Pursuant to the Agreement,

Mr. Tschiffely was provided the 'non-exclusive right to introduce prospective buyers to the Seller [Cross Country] who are not already known to the Seller for the term of the Agreement." Id. The Agreement required Defendant CCA to pay Plaintiff Tschiffely a "Referrer's fee," for his "introductions and referrals," "calculated as a percentage of the '**GROSS** value of the services sold by Seller as a direct result of an introduction.'" Id.

The Complaint alleges that "beginning in October, 2020, Cross Country beg[a]n to deliberately underpay Mr. Tschiffely on his monthly invoices." (Document No. 1-1, p. 5). Plaintiff brings this action based on Defendant's alleged "continuous breach of its payment obligations." Id.

Defendant filed a "…Notice Of Removal" (Document No. 1) with this Court on July 29, 2021. Based on the parties' diversity and the amount in controversy, Defendant states that "this Court has jurisdiction over the claims alleged in this case." (Document No. 1, p. 1) (emphasis added). Defendant then filed the pending "…Motion To Dismiss…" on August 19, 2021, alleging "that the Court lacks personal jurisdiction over CCA for the claim alleged in the Complaint." (Document No. 6, p. 1).

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the

2

existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. December 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the

3

forum.  <u>Helicopterous Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state.  The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State;  (2) whether the plaintiff's claims arise out of those activities directed at the State;  and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'"  <u>New Wellington</u>, 416 F.3d at 294 (citing <u>Mitrano v. Hawes,</u> 377 F.3d 402, 407 (4th Cir. 2004).

## III. DISCUSSION

Defendant's "…Brief In Support Of Motion To Dismiss" describes this lawsuit as

> a straightforward breach of contract action based on the referral fee agreement between the parties.  This Court does not have personal jurisdiction over the CCA because all of the work that CCA performed under this agreement – and incidentally the vast majority of the work performed by Plaintiff – occurred in South Carolina. For this reason, the Court should dismiss the case because it lacks personal jurisdiction over Defendant CCA.

(Document No. 7, p. 2).

Defendant first contends that "Plaintiff does not allege and cannot show a plausible basis for specific jurisdiction over CCA."  (Document No. 7, pp. 6-8).  Defendant argues that Plaintiff "cannot show that his claim arises out of any activities by CCA in the state of North Carolina." (Document No. 7, p. 7).  According to Defendant, specific jurisdiction is lacking because there is no "affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State."  <u>Id.</u> (quoting <u>Bristol-Myers Squibb Co.</u>, 1437 S.Ct. 1773, 1781 (2017) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 918 (2011)).

4

Defendant asserts that all the work it performed under the Agreement was performed in South Carolina; it only had "incidental electronic communications" with Plaintiff while he was located in North Carolina; and that all CCA's calculations of the referral fees under the Agreement were performed in South Carolina. (Document No. 7, p. 7) (citing Document No. 8). Defendant further asserts that Plaintiff "performed substantial work under the Agreement at CCA's offices in South Carolina." (Document No. 7, p. 8). To the extent "Plaintiff may have also performed some work from his residence in North Carolina," Defendant notes that the Agreement did not require him to perform work from home. Id. Defendant also notes that the Agreement between the parties includes a South Carolina choice of law clause that, while not determinative, demonstrates that CCA did not intend to create a tie between the Agreement and North Carolina. Id.

Next, Defendant contends that "Plaintiff does not allege and cannot show a plausible basis for general jurisdiction over CCA." (Document No. 7, pp. 9-10). Defendant notes that it is "incorporated and has its principal place of business in South Carolina" and that

> CCA has no registered agent in North Carolina, has no place of business in North Carolina, owns no real estate or personal property in North Carolina, has no bank accounts in North Carolina, has no post office boxes in North Carolina, has no telephone listings in North Carolina, and does not maintain any records in North Carolina. (Currie Decl. at ¶ 3.) CCA is not registered to do business in North Carolina as a foreign corporation, and it has never applied for authorization to do business in North Carolina. (Id.)

(Document No. 7, pp. 9-10).

Defendant acknowledges that it conducts claims adjusting activity in North Carolina, but concludes that its activity is insufficient to provide this Court general jurisdiction and argues that "CCA is only 'at home' in South Carolina for general jurisdiction purposes." (Document No. 7, p. 10).

5

In response, Plaintiff does not argue that this Court should find general jurisdiction, but contends that this Court does have specific jurisdiction over Defendant. (Document No. 13, pp. 6-12). Plaintiff argues that the due process requirements for specific jurisdiction, identified by the Fourth Circuit's three-part test set forth above, are satisfied here. (Document No. 13, pp. 6-7). Plaintiff asserts that this Court plainly has personal jurisdiction over Defendant because:

> Through its contract with Plaintiff, Defendant purposely availed itself of the privileges of conducting business in North Carolina, it conducted extensive business in North Carolina, and as a result of Plaintiff's efforts generated a substantial amount of revenue from a business based in North Carolina, and for which it has not fully paid Plaintiff pursuant to the Agreement at issue in this case.

(Document No. 13, p. 7).

Plaintiff goes on to provide more detailed factual allegations than are included in the Complaint that he contends support this Court's jurisdiction. Among those allegations, Plaintiff avers that Defendant CCA, through its President and CEO, Andrew Currie ("Currie"), reached out to Plaintiff, "a North Carolina resident, to form a business arrangement whereby Defendant would take advantage of Mr. Tschiffely's substantial business contacts in the insurance industry to generate clients and business." (Document No. 13, p. 8) (citing Document No. 14). Plaintiff argues that Defendant knew it would receive business referrals and introductions from a North Carolina resident; that it has repeatedly directed payments to Plaintiff's bank account in North Carolina; and that Defendant concedes that it directed phone calls and emails to Plaintiff in North Carolina in connection with the parties' performance under the Agreement. (Document No. 13, pp. 8-9).

One particularly significant connection between Defendant and this forum described by Plaintiff involves a meeting between Tschiffely, Currie, and IAT Insurance in Raleigh, North Carolina on or about July 9, 2018. (Document No. 13, pp. 3-4, 9-11). "Mr. Currie and Mr.

Tschiffely used Defendant's private plane hangered at the Charlotte-Monroe Airport to travel to IAT Insurance's office in Raleigh." (Document No. 13, p. 3). "The purpose of this trip with Mr. Currie was to introduce him to principals at IAT Insurance." Id. Plaintiff notes that IAT Insurance then became "a customer of CCA and accordingly a 'Referred Client' subject to referral fees under the Agreement." Id. Moreover, CCA has provided services related to approximately 8,130 insurance claims assigned by IAT Insurance from its Raleigh office. Id. Plaintiff contends 250-300 of these claims were made by policyholders in North Carolina or involve loss on property in North Carolina. Id. Plaintiff further contends that about 70% of his damages in this case are due to unpaid referral fees from IAT Insurance, a company based in North Carolina, that assigned insurance claims and business to Defendant from North Carolina. (Document No. 13, p. 10).

In addition, Plaintiff contends that he and Currie used this plane, departing from the Charlotte-Monroe Airport, on at least six other business trips to introduce Currie to potential customers. (Document No. 13, p. 3).

Plaintiff concludes that the foregoing establishes that Defendant "purposefully availed itself of the privilege of conducting activities in North Carolina" and that his claims "arise out of Defendant's activities in North Carolina." (Document No. 13, pp. 9, 11).

Finally, Plaintiff argues that North Carolina is a constitutionally reasonable forum. (Document No. 13, pp. 11-12). Plaintiff notes that Defendant has not presented any argument that the assertion of personal jurisdiction over it would be burdensome or is otherwise unreasonable or unfair. (Document No. 13, p. 11). Moreover, Plaintiff asserts that this Court's jurisdiction would not impose an undue burden because it is less than fifty miles from Defendant's principal place of business in Pageland, South Carolina.

In reply, Defendant suggests that Plaintiff has focused on prongs of the personal jurisdiction test that are not at issue. (Document No. 15, p. 1). Defendant asserts that its motion "is based exclusively on whether Plaintiff's claims arise out of the activities CCA conducted in North Carolina." (Document No. 15, p. 2). According to Defendant, "there is no North Carolina-based activity on which Tschiffely's claim is based that can serve as a basis for personal jurisdiction over CCA." (Document No. 15, p. 3).

Defendant goes on to concede that that there is "no dispute" that the activity related to IAT Insurance in Raleigh, North Carolina "reflects purposeful availment by CCA of the privilege of conducting activities in North Carolina." Id. However, Defendant argues that the decision to refer IAT Insurance to CCA was Plaintiff's decision, and that "his claim cannot arise out of his actions but rather must arise out of CCA's alleged action." Id.

Next, Defendant argues that directing emails and phone calls to Plaintiff in North Carolina is not a sufficient basis for jurisdiction. (Document No. 15, p. 4). Similarly, Defendant argues that knowingly entering into the Agreement with a North Carolina resident is also insufficient to establish *in personam* jurisdiction. (Document No. 15, p. 5).

In conclusion, Defendant summarizes its position as follows:

> CCA entered into a contract with a North Carolina resident (Tschiffely) under which (1) all of CCA's performance was conducted outside of North Carolina, (2) the North Carolina resident was free to perform his work wherever he chose and, in fact, performed daily in person work in South Carolina, (3) South Carolina law governed.

(Document No. 15, p. 6).

The undersigned finds Plaintiff's arguments to be more persuasive. At a minimum, it appears that dismissal at this stage of the litigation would be premature and that the parties should be directed to proceed with discovery and/or Plaintiff should be allowed to amend the Complaint.

8

Notably, Defendant's motion asserts that CCA did not perform any work in North Carolina under the Agreement and that CCA does not own any property in North Carolina. See (Document No. 7, pp. 2, 9). However, Defendant does not appear to dispute Plaintiff's allegations that CCA owns an airplane that it keeps in North Carolina, and that Mr. Currie and Mr. Tschiffely used that airplane and a North Carolina airport to make multiple business trips related to the parties' Agreement. (Document No. 13, pp. 1-3, 10-11); see also (Document No. 15, p. 3). Accepting these allegations as true, CCA does own property in North Carolina and performed work in North Carolina under the Agreement.

While it was apparently Mr. Tschiffely's decision to refer IAT Insurance to CCA, it seems that Mr. Currie was an active participant in setting up that business relationship by flying to Raleigh with Tschiffely. Moreover, Plaintiff alleges that IAT Insurance is now one of Defendant's biggest clients and that 70% of his damages in this case relate to referral fees from IAT Insurance. (Document No. 13, p. 10). As such, it does appear that Plaintiff's claim arises, at least in significant part, from activity CCA conducted in North Carolina.

The undersigned observes that in examining the second prong – "the suit must arise out of or related to the defendant's contacts with the forum" – this Court recently opined that it can be "satisfied where 'substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." Software Pricing Partners, LLC v. Geisman, 3:19-CV-195-RJC-DCK, 2020 WL 3249984, at *3 (W.D.N.C. June 16, 2020) (quoting Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 303 (4th Cir. 2012)).

The parties' collaboration in flying together to meetings with prospective referrals/clients pursuant to the underlying Agreement, from North Carolina, on a plane owned by Defendant and

based in North Carolina, seems to provide considerable support for a finding that this Court has personal jurisdiction over Defendant. Not only did Defendant have an on-going business relationship with Plaintiff, but Defendant, with Plaintiff's assistance under the Agreement, also appears to have directed activities at other North Carolina residents and/or the North Carolina market. Defendant's activity directed at North Carolina resulted in at least one client (IAT Insurance) with whom Defendant also has an on-going relationship, and which allegedly supports the majority of Plaintiff's claim for damages under the Agreement.

Viewing the allegations in the light most favorable to Plaintiff, assuming his credibility, and drawing the most favorable inferences for the existence of jurisdiction, the undersigned concludes that this motion should be "denied without prejudice to Defendant's ability to re-file a similar motion at a later date if discovery reveals additional or different facts that might affect the Court's jurisdictional determination." See Data Driven Safety, Inc. v. Driver's History, Inc., 3:12-CV-415-RJC-DCK, 2012 WL 6093449, at *1 (W.D.N.C. Dec. 7, 2012); see also Combs, 886 F.2d at 676. In the alternative, the Court might allow Plaintiff leave to file an Amended Complaint that could include additional factual allegations relevant to jurisdiction that were not included in the original Complaint filed in state court.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant Cross Country Adjusting, Inc.'s Motion To Dismiss Plaintiff's Complaint" (Document No. 6) be **DENIED WITHOUT PREJUDICE**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact,

conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

        **IT IS SO RECOMMENDED**.

Signed: March 30, 2022

David C. Keesler
United States Magistrate Judge